IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00188-MOC-WCM

MARGARET MACNISH,

    Plaintiff,

v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

MEMORANDUM AND RECOMMENDATION

This matter is before the court on the parties' cross motions for summary judgment (Docs. 12, 15), which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I.    Procedural Background

On March 14, 2017, Plaintiff Margaret Macnish ("Plaintiff") filed an application for disability insurance benefits alleging disability beginning on July 12, 2016. Transcript of the Administrative Record ("AR") 370-376.[1]

---

[1] Although Plaintiff's Application for Disability Insurance Benefits includes a March 29, 2017 date in the header, the body of the Application indicates that the Administration spoke with Plaintiff and completed her application for social security benefits on March 14, 2017. AR 370. While Plaintiff states in one portion of her briefing that she applied for disability insurance benefits on March 29, 2017, see Doc. 13 at 5, she also contends, when analyzing her allegations of error, that she filed her Application on March 13, 2017. Doc. 13 at 19; 25; see also Doc. 16 at 7; 12 (Commissioner's statements that Plaintiff filed her Application before March 27, 2017).

1

On July 1, 2019, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. AR 187-216.

Plaintiff appealed that denial to the Social Security Administration's Appeals Council, and on May 20, 2020, the Appeals Council remanded the case to the ALJ. AR 217-220.

On November 16, 2020, Plaintiff also applied for supplemental security income. AR 405-414.

On January 13, 2021, following additional administrative hearings at which Plaintiff appeared and testified, the ALJ issued another unfavorable decision. AR 12-50. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "degenerative disc disease of the cervical spine, occipital neuralgia, carpal tunnel syndrome, PTSD, and depressive disorder." AR 18. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work…except the claimant could lift/carry 20 pounds occasionally and 10 pounds frequently with standing and walking for six hours of

an eight-hour workday and sitting for six hours of an eight-hour workday. She could never climb a ladder, rope, or scaffold and she could perform occasional balancing, stooping, kneeling, crouching, crawling, and climbing a ramp or stairs. She could do frequent but not constant reaching in all directions. She should avoid concentrated exposure to workplace hazards such as unprotected heights and moving machinery. She could have occasional interaction with the general public and perform low-stress work defined as occasional decision making and occasional changes in the work setting.

AR 24-25.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform certain jobs that exist in significant numbers in the national economy such that Plaintiff was not disabled during the relevant period. AR 40-42.

### III. Plaintiff's Allegations of Error

Plaintiff argues that the ALJ did not consider appropriately a North Carolina Department of Health and Human Services decision (the "NCDHHS Decision," AR 515-516), the opinion of her treating psychiatrist, Dr. Scott Marder (AR 1304-1305), and the opinion of an examining physician, Dr. Sunil Bansal (AR 1474-1488).

### IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from

3

engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

4

Case 1:21-cv-00188-MOC-WCM  Document 20  Filed 08/19/22  Page 4 of 19

## V. Discussion

### A. The NCDHHS Decision

Although "[a] disability decision by another entity does not bind the SSA," the Fourth Circuit has held that the Administration generally must give substantial weight to a disability decision by the NCDHHS. Woods v. Berryhill, 888 F.3d 686, 692 (4th Cir. 2018); Kiser v. Saul, 821 Fed. Appx. 211, 215 (4th Cir. 2020). This "default rule" exists because "[b]oth NCDHHS and Social Security disability insurance benefits 'serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability'" and because "NCDHHS defines 'Medicaid to the Disabled' as a 'program of medical assistance for individuals under age 65 who meet Social Security's definition of disability.'" Id. (internal citations omitted). "'Because the purpose and evaluation methodology of both programs are closely related…in making a disability determination, the SSA must give substantial weight to an NCDHHS disability decision." Id. (quoting Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 343 (4th Cir. 2012)).[2]

---

[2] In Woods, the court considered a previous version of 20 CFR § 404.1504 which required an ALJ to "explain the consideration given to [decisions by other governmental or nongovernmental agencies regarding a claimant's disability] in the notice of decision for hearing cases." Woods, 888 F.3d at 691. The current version of this regulation states that for claims filed on or after March 27, 2017, the Commissioner will not analyze a disability decision made by another agency. 20 CFR § 404.1504. Because Plaintiff filed her application prior to March 27, 2017, though, the version of 20 CFR § 404.1504 discussed in Woods is applicable.

However, "an ALJ may deviate from this default rule and accord an NCDHHS disability decision less than 'substantial weight' if 'the record before the ALJ clearly demonstrates that such a deviation is appropriate.'" Woods, 888 F.3d at 692. To satisfy this standard, "an ALJ must give 'persuasive, specific, valid reasons for doing so that are supported by the record.'" Id. (quoting McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002)). "For example, an ALJ could explain which aspects of the prior agency decision he finds not credible and why, describe why he finds other evidence more credible, and discuss the effect of any new evidence made available after NCDHHS issued its decision." Id. "This list is not exclusive, but the point of this requirement—and of these examples—is that the ALJ must adequately explain his reasoning; otherwise, we cannot engage in a meaningful review." Id. at 692-693 (citing Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)); see also Lewis v. Berryhill, No. 3:17-cv-350-DCK, 2018 WL 3025955, at *5 (W.D.N.C. June 18, 2018) (an ALJ's explanation for not giving a state agency administrative agency's disability decision substantial weight "must adequately lay out the ALJ's reasoning so that a court can engage in meaningful review.").

Here, the February 20, 2018 NCDHHS Decision concluded that Plaintiff met the "disability requirement referenced in 20 CFR 416.920(d), Appendix 1, Listing 12.07A3B3&4" ("Listing 12.07") and explained:

> Appellant's impairment of somatoform disorder meets the requirements of [Listing 12.07]. The review of the records shows multiple physical providers indicating the Appellant had a significant psychological overlay to her physical symptoms including pain. The Appellant was evaluated in May 2017 after presenting to the emergency room reporting she was being abused in her sleep over multiple months. She did not want inpatient behavioral health admission and was released to outpatient treatment. A June 2017 exam noted the Appellant's psychological provider had found the Appellant to be cognitively disorganized with possible delusions and felt she was suffering from a severe somatoform disorder. A July 2017 behavioral health visit noted the Appellant was disorganized and hyper-focused on her medical issues. The Appellant was discussing previous times when she thought she had breast cancer but was not believed. She reported being rejected by all her medical providers and obsessed with "medical injustices." The review of evidence supports the Appellant has severe somatoform disorder and presented to multiple providers for treatment of physical symptoms inconsistent with the objective medical findings along with preoccupation of having disorders such as breast cancer that she did not have. The medical evidence also shows marked difficulty with concentrating with disorganized thoughts on multiple exams. The evidence also supports marked limitations in her ability to adapt to social and work settings due to her somatoform disorder.

> AR 516.

The ALJ was aware of the NCDHHS Decision and made the following

statements about it:

> I have considered the evidence on which the NCDHHS [Decision] was based, as well as the record as a whole. Similarly, I have considered all relevant and available evidence, such as subjective complaints, medical history, medical opinions, and statements about treatment the claimant has received, for example, I have considered the NCDHHS disability decision in conjunction with evidence discussed within it, in addition to evidence from other sources not discussed within it. Consequently, I give the opinion of NCDHHS regarding the claimant's eligibility for Medicaid limited weight rather than substantial weight.

AR 35.

It appears that the ALJ also, in other sections of his decision, discussed the medical records upon which the NCDHHS Decision was based. See AR 27 (discussing May 2017 evaluation (AR 654-658), June 2017 exam (AR 698-702), and comparing session notes from July 7, 2017 (the session referenced in the NCDHHS Decision) with session notes from July 20, 2017 (AR 710 (July 7, 2017); AR 709 (July 20, 2017)). Additionally, the ALJ considered Plaintiff's mental health treatment after July 2017 and explained that despite some contrary evidence, Plaintiff's mental status exams were largely normal. See e.g. AR 28 (discussing October 2017 and November 2017 mental health records (citing AR 952, 956, 959)); AR 30 (discussing mental health sessions in April and May 2019 showing Plaintiff was "doing relatively well," "seemed able to keep up with classwork online," "was focused on her studies and playing with

8

her dogs and kittens," and concluding that "[t]hese mental health visits have few, if any references to a somatoform disorder, specifically" (citing AR 1261, 1259, 1258)).

The ALJ did not, however, sufficiently explain *why* he chose to give the NCDHHS Decision less than substantial weight. That is, though he reviewed the evidence upon which the NCDHHS Decision was based, he did not provide persuasive, specific, valid reasons explaining why he concluded that the NCDHHS Decision was not entitled to substantial weight based on the evidence that the NCDHHS considered and/or evidence acquired after the NCDHHS Decision. See Pate v. Saul, No. 3:19-CV-00633-FDW-DSC, 2020 WL 6216817, at *4 (W.D.N.C. Oct. 22, 2020) (the ALJ's decision to afford an NCDHHS decision little weight because it was "without substantial support from the other evidence of record," without more, precluded meaningful review because the ALJ failed to "'explain why [the NCDHHS decision is not supported] with reference to the evidence considered,' and thus, is insufficient to justify assigning less than substantial weight to it'") (quoting Morgan v. Berryhill, 2018 WL 6606077-GCM, at *2 (W.D.N.C. Dec. 17, 2018) and finding that the ALJ's statement that an NCDHHS decision should be afforded little weight because it was "without substantial support from the other evidence of record" was insufficient); Reese v. Berryhill, No. 5:17-cv-00149-FDW, 2018 WL 4365534, at *3 (W.D.N.C. Sept. 13, 2018) ("The ALJ's decision to accord

Plaintiff's prior Medicaid eligibility 'little weight' was supported only by the explanation that 'it is not consistent with the evidence discussed herein' is not sufficiently persuasive or specific to justify a deviation from the Fourth Circuit's default rule of according decisions by other agencies like NCDHHS substantial weight"); Holley v. Berryhill, No. 2:17-CV-27-BO, 2018 WL 4266363, at *3 (E.D.N.C. Sept. 5, 2018) (concluding that the ALJ failed to provide persuasive, specific, and valid reasons for giving less than substantial weight to an NCDHHS disability decision where "the ALJ merely concluded that the NCDHHS disability decision was due minimal weight because it was inconsistent with other medical evidence and plaintiff's work history" (quotation marks omitted)); compare Digregorio v. Saul, No. 1:19-CV-00268-MOC, 2020 WL 4437271, at *4 (W.D.N.C. Aug. 3, 2020) (finding that the ALJ adequately explained her decision to afford an NCDHHS determination limited weight).

The undersigned will therefore recommend remand on this basis.

### B. Consideration of Opinion Evidence

#### 1. Dr. Scott Marder

Generally, a treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical evidence and is not inconsistent with other substantial evidence of record. See 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th

10

Case 1:21-cv-00188-MOC-WCM   Document 20   Filed 08/19/22   Page 10 of 19

Cir.2001). However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir.1996); 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4); see also Mastro, 270 F.3d at 178 ("Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.").

Here, Plaintiff's treating psychiatrist, Dr. Scott Marder, completed a Medical Source Statement on May 23, 2019. AR 1304-1306. Therein, Dr. Marder indicated that Plaintiff had "slight" limitations in understanding, remembering, and carrying out short and simple instructions, and interacting appropriately with the public; "moderate" limitations in understanding, remembering, and carrying out detailed instructions, making simple work-related decisions, interacting with supervisors and coworkers, and responding to changes in a routine work setting; and a "marked" limitation in her ability to respond appropriately to work pressures. AR 1305. Dr. Marder additionally indicated that Plaintiff's impairments would cause her to be absent from work four or more times per month because Plaintiff's "anxiety and pain issues are intermittent and not stable while under my care." AR 1306.

Although it appears that the ALJ considered Dr. Marder to be Plaintiff's treating psychiatrist, the ALJ determined that Dr. Marder's "proposed mental

11

Case 1:21-cv-00188-MOC-WCM Document 20 Filed 08/19/22 Page 11 of 19

limitations deserve less weight, because [Dr. Marder] states that while under his care, the claimant's pain issues are not stable, but the claimant has reported that her mental symptoms are stable, as discussed in this decision, and his treatment notes contain no more than marginally abnormal clinical mental findings." AR 36. The ALJ did not include citations to Dr. Marder's treatment records immediately following this statement.

The ALJ did, however, discuss Dr. Marder's treatment notes earlier in his decision. See AR 30 (discussing AR 1261 (Dr. Marder's April 11, 2019 treatment note reflecting that Plaintiff's "thought processes were linear, logical and goal directed and she denies hallucinations or paranoid thinking, Cognition, judgment and insight are intact," and that Plaintiff seemed able to keep up with her school work and had been getting some papers done)); AR 33 (discussing AR 1419-1452 with specific citations to July 2019 through October 2020 treatment records reflecting that Plaintiff was cooperative, had appropriate grooming and hygiene, appropriate affect, linear, logical, and goal directed thought processes, no OCD symptoms, and exhibited intact cognition, judgment, and insight (see AR 1444; 1442; 1439; 1437; 1435; 1433; 1431; 1428; 1425; 1423; 1420)). The ALJ likewise included specific citation to the records supporting his statement that Plaintiff's pain issues were stable. See e.g. AR 31 (citing AR 1276 (reflecting cervical radiofrequency ablation had resulted in improved function and decreased the severity of her symptoms significantly);

AR 33 (citing AR 1458 and AR 1453 and discussing pain management sessions wherein Plaintiff reported decreased pain and underwent conservative treatment).

Accordingly, while the ALJ's discussion of Dr. Marder's opinion could have been more precise, the undersigned will not recommend remand on this basis.

### 2. Dr. Sunil Bansal

On June 11, 2019, Dr. Sunil Bansal conducted an independent medical evaluation, including a physical examination of Plaintiff. In his report following that evaluation, Dr. Bansal stated that Plaintiff had constant neck pain and numbness radiating down both of her arms, she was not able to drive due to pain and an inability to look to either side, she could not lift more than 20 pounds, had difficulty with concentration and short term memory, and should avoid "work or activities that require repeated neck motion, or that place her neck in a posturally flexed position for any appreciable duration of time (greater than 15 minutes)." AR 1485-1487. Dr. Bansal assigned Plaintiff a "5% whole person impairment." AR 1487.

The ALJ assigned "limited weight" to Dr. Bansal's opinions because he "had no treatment relationship" with Plaintiff, and because Dr. Bansal's opinions seemed "largely to simply regurgitate the claimant's complaints as she subjectively reported them, given that his actual physical exam of the

claimant was no more than marginally abnormal." AR 36. While the ALJ included a limitation in Plaintiff's RFC to lifting twenty pounds occasionally (a limitation consistent with Dr. Bansal's opinion), the ALJ explained that he addressed Dr. Bansal's opinion that Plaintiff should avoid repeated neck motions by limiting Plaintiff's reaching in all directions and that there was "no support in the evidence for specific, additional neck-related limitations…." Id.

An ALJ may, under appropriate circumstances, assign lesser weight to a medical opinion that is based on a plaintiff's subjective symptoms. Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004) (finding that "the ALJ properly discredited medical assessments based solely on [the claimant's] subjective reports of emotional impairment"); see also Mastro v. Apfel, 270 F.3d 171, 177–78 (4th Cir. 2001) (ALJ correctly afforded treating physician's medical opinion little weight given the physician based his opinion on the claimant's subjective complaints without sufficient evidence to substantiate claimant's claims); Owen v. Colvin, No. 1:15-cv-00115-MOC, 2016 WL 4373702, at *7 (W.D.N.C. Aug. 15, 2016) ("The Fourth Circuit has held that an ALJ may give the medical opinion of a treating physician little weight if the opinion is based on the subjective complaints of the patient without sufficient evidence to substantiate their claims").

Further, the ALJ explained, specifically with respect to Dr. Bansal's physical examination of Plaintiff, that while the examination showed

14

tenderness in the cervical spine, spasms in the cervical muscles, and limited cervical range of motion, the exam also revealed normal neurological findings, normal sensation in the upper extremities "other than some non-qualified loss of sensation over the right thumb," and 5/5 muscle strength in the upper extremities. AR 33-34 (discussing AR 1484).

Finally, the ALJ discussed multiple records regarding Plaintiff's neck-related limitations when developing Plaintiff's RFC. Specifically, the ALJ noted that during an August 30, 2017 neurology visit, Plaintiff complained of neck tenderness but had full range of motion of the cervical spine and conservative care was recommended. AR 27 (citing AR 792-793). The ALJ considered later neurology records and explained that such records reflected "normal or no more than marginally abnormal" findings. See AR 28 (discussing AR 858-860 (reflecting decreased range of motion in cervical spine with normal bulk and muscle tone); AR 965-1008 (same)). The ALJ also discussed records reflecting that Plaintiff reported that medication helped and that she was "moving her head and neck with usual activity normally." AR 29 (citing AR 1089, July 30, 2018); see also AR 31 (discussing AR 1276, March 26, 2019 record wherein Plaintiff report that cervical radiofrequency ablation had improved function and range of motion, and had decreased the severity of her symptoms significantly); AR 32 (citing AR 1350-1351, January 1, 2020 record indicating full range of motion in neck despite tenderness). Additionally, the

ALJ acknowledged other records reflecting limited range of motion in Plaintiff's neck, but noted that ablation procedures and other conservative treatment provided relief. See e.g. AR 33 (discussing pain management visits in May 2019 through March 2020). With respect to neck-related limitations, the ALJ further explained that Plaintiff had:

> abnormal findings concerning the neck, including decreased range of motion and tenderness to palpitation, but overall, the findings concerning the neck and occipital neuralgia are marginal. For example, findings on MRI of the neck and NCS/EMG of the upper extremities have shown only mild findings with no evidence of significant spinal stenosis or nerve impingement. All treatment to the neck and hands has been conservative, and there does not appear to be a surgical issue with either the neck or the hands. The neurological findings are consistently normal, including in terms of muscle tone, muscle strength, grip strength, gait, and sensation. On some occasions, the claimant has normal ranges of motion of the neck and hands….

AR 37.

The substantial evidence standard "'presupposes…a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" Dunn v. Colvin, 607 Fed. Appx. 264, 274 (4th Cir. 2015) (quoting Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)). At the same time, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply

cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017); see also Lantrip v. Berryhill, No. 1:15-CV-00227-RLV, 2017 WL 1179151, at *3 (W.D.N.C. March 28, 2017) ("as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a de novo review of the record").

Here, the undersigned finds that the ALJ explained his treatment of Dr. Bansal's opinion sufficiently. While specific citations immediately following the ALJ's statement that there was "no support in the evidence for specific additional neck-related limitations" may have been helpful, the ALJ's reasoning is sufficiently clear. See Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (in formulating the RFC, the ALJ "must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion").

## VI. Recommendation

The undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 12) be **GRANTED**, and that the Commissioner's Motion for Summary Judgment (Doc. 15) be **DENIED.**

Signed: August 18, 2022

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).